CV10 - 1088

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
NASTAZJA FRIIS RASMUSSEN and
IVAN KIMBROUGH and CARMEN
KIMBROUGH,

                    Plaintiff.

          -against-

THE CITY OF NEW YORK, POLICE OFFICER
CHRISTOPHER CARRERO, DETECTIVE
JOHN R. NIXON, SERGEANT JOHN VANORDEN,
POLICE OFFICER JAMES MAHONY, POLICE
OFFICERS JOHN DOE ,
Individually and in their Official Capacities,

                    Defendants.
------------------------------------------------------x

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ MAR 1 0 2010 ★

BROOKLYN OFFICE

COGAN, J.

**COMPLAINT
AND DEMAND FOR
JURY TRIAL**

Plaintiff, NASTAZJA FRIIS RASMUSSEN, IVAN KIMBROUGH and CARMEN

KIMBROUGH, by and through his attorneys, **Fisher & Byrialsen, PLLC,** complaining of the

defendants herein, respectfully shows the Court and alleges:

## PRELIMINARY STATEMENT

1. Plaintiff brings this action for compensatory damages, punitive damages, and

attorney's fees pursuant to 42 U.S.C. §§ 1981, 1983, and 1988, for the wrongful acts of

Defendants THE CITY OF NEW YORK and POLICE OFFICER CHRISTOPHER CARRERO,

DETECTIVE JOHN R. NIXON, SERGEANT JOHN VANORDEN, POLICE OFFICER

JAMES MAHONY and POLICE OFFICERS JOHN DOE, as Officers of the New York City

Police Department, acting under color of state law and pursuant to their authority, in violation of

Plaintiff's rights secured by the Civil Rights Act of 1871, 42 U.S.C. §§ 1981, 1983, 1988; by the

United States Constitution, including its Fourth, Fifth, Eighth, and Fourteenth Amendments; and

by the laws and Constitution of the State of New York.

## JURISDICTION

2.  This action is brought pursuant to 42 U.S.C. §§ 1981, 1983, and 1988, and the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, and the constitutional, statutory, and common laws of the State of New York.

3.  Jurisdiction is invoked herein pursuant to the aforementioned statutory and constitutional provisions and pursuant to 28 U.S.C. §§ 1331, 1343, this being an action seeking redress for the violation of the plaintiff's constitutional and civil rights.

4.  Plaintiff further invokes this Court's pendent jurisdiction over any and all state-law claims and causes of action which derive from the same nucleus of operative facts that give rise to the federally based claims and causes of action pursuant to 28 U.S.C. § 1367.

## VENUE

5.  Venue is properly laid in this District under 28 U.S.C. § 1391(b), this being the District in which the claim arose.

## NOTICE OF CLAIM

6.     Plaintiffs Nastazja Friis Rasmussen and Plaintiff Ivan Kimbrough filed a Notice of Claim with the Comptroller of the City of New York within 90 days of the events complained of herein.  More than 30 days have elapsed since the filing of the Notice of Claim, and adjustment or payment thereof has been neglected or refused.

## TRIAL BY JURY

7.  Plaintiffs demand a trial by jury on each and every one of their claims as pled herein pursuant to Fed. R. Civ. P.38(b).

## PARTIES

8.  At all times relevant hereto Plaintiff Nastazja Friis Rasmussen was and is a citizen of

2

Denmark and was residing in Brooklyn, New York at the time of the incident.

9. At all times relevant hereto Plaintiff Ivan Kimbrough* is a Hispanic-American citizen of the United States and was at all times relevant here a resident of Brooklyn, New York.

10. At all times relevant hereto Plaintiff Carmen Kimbrough, Ivan Kimbrough's mother, is a Hispanic-American citizen of the United States and was at all times relevant here to a resident of Brooklyn, New York.

11. At all times relevant hereto defendant The City of New York (hereinafter, "NYC") was and is a municipality of the State of New York and owns, operates, manages, directs, and controls the New York City Police Department, which employs the other named Defendants.

12 At all times relevant to this action, Defendants Police Officer Carrero, Detective Nixon, Sergeant Vanorden, Police Officer Mahony and Police Officer John Doe are and were police officers employed by the New York City Police Department (hereinafter, "NYPD"), and acting under color of state law. They are being sued in both their individual and official capacities.

13. At all times relevant hereto and in all their actions described herein, Defendants Police Officer Carrero, Detective Nixon, Sergeant Vanorden, Police Officer Mahony and Police Officer John Doe were acting under color of statutes, ordinances, regulations, policies, customs, and usages of the NYPD and NYC, pursuant to their authority as employees, servants, and agents of the NYPD within the scope of employment and incidental to their otherwise lawful duties and functions as employees, servants, agents, and police officers.

---

* Throughout this complaint Plaintiff Ivan Kimbrough will be referred to as Plaintiff Kimbrough.

3

14. NYC was responsible for the hiring, training, supervision, discipline, retention, and promotion of the police officers, sergeants, and/or employees of the NYPD. They are being sued both in their individual and official capacity.

**FACTS**

15. On March 7, 2009, at approximately 7:15 p.m., Plaintiff Ivan Kimbrough, was walking near the intersection of 4th Avenue and 41st Street in Brooklyn, New York.

16. Plaintiff Ivan Kimbrough was going to the store to buy a cigar to be used to smoke marijuana.

17. Plaintiff Ivan Kimbrough did not have any marijuana in plain view as he walked down the street, nor was he engaged in any illegal conduct when he walked down the street.

18. While he was walking Plaintiff Ivan Kimbrough was on the phone with his sister, Amy Ruther.

19. As Plaintiff Ivan Kimbrough was on the phone with his sister and walking down the street, a car pulled up next to him and several of the defendants exited the car and stopped him.

20. The defendants then forcefully grabbed and held Plaintiff Ivan Kimbrough and started to search him.

21. When the defendants started to search Plaintiff Ivan Kimbrough, he panicked, pulled free and ran from defendants.

22. Plaintiff Ivan Kimbrough ran back to his apartment building at 457 40th Street, Brooklyn, New York.

23. Plaintiff Ivan Kimbrough looked behind him as he arrived at his apartment building and no one was behind him.

24. He entered the building and ran to the roof.

4

25. On the roof, Plaintiff Ivan Kimbrough threw the marijuana he had in his pocket off the roof.

26. Plaintiff Ivan Kimbrough then went downstairs to his apartment, Apartment 3L, and entered his bedroom where his girlfriend at the time, Plaintiff Rasmussen, was sitting.

27. Plaintiff Ivan Kimbrough explained to Plaintiff Rasmussen what had happened outside.

28. Plaintiffs then heard banging on the front door of the apartment.

29. Plaintiff Carmen Kimbrough came out of her bedroom towards the front of the apartment and opened the front door.

30. Outside the front door were Defendants Police Officer Carerro, Detective Nixon, Sergeant Jonh Vanorden, Police Officer Mahony and Police Officers John Doe.

31. Defendants Police Officer Carerro, Detective Nixon, Sergeant Vanorden, Police Officer Mahony and Police Officers John Doe pushed past Plaintiff Carmen Kimbrough.

32. Defendants Police Officer Carerro, Detective Nixon, Sergeant Vanorden, Police Officer Mahony and Police Officers John Doe spread out and ran through the apartment entering every room.

33. Plaintiff Carmen Kimbrough did not give Defendants Police Officer Carerro, Detective Nixon, Sergeant Vanorden, Police Officer Mahony nor Police Officers John Doe permission to enter her home. In fact, she told them that they needed a warrant to enter the home.

34. Defendants Police Officer Carerro, Detective Nixon, Sergeant Vanorden, Police Officer Mahony and Police Officers John Doe entered the back bedroom with their firearms draw. Plaintiff Rasmussen was sitting on the bed.

5

35.  Plaintiff Ivan Kimbrough heard the Defendants running through the apartment, got scared and he hid in the closet.

36.  One of the Defendants asked Plaintiff Rasmussen if anybody is in the room; she did not respond.

37.  From a crack in the closet door Plaintiff Ivan Kimbrough saw Defendant Nixon approach the closet with his gun pointed at the closet.

38.  Defendant Nixon opened the closet door and Plaintiff Ivan Kimbrough immediately puts his hands up.

39.  Defendant Nixon screamed "You want to run?" and then punched Plaintiff Kimbrough in the head.

40.  Defendant Nixon grabbed Plaintiff Kimbrough, and threw him onto the bed.

41.  Defendants Police Officer Carerro, Detective Nixon, Sergeant Vanorden, Police Officer Mahony and Police Officers John Doe proceeded to beat and kick Plaintiff Kimbrough as he was on the bed.

42.  One of the Defendants kneeled on Plaintiff's back and hand cuffed him.

43.  Defendants continued to beat Plaintiff Ivan Kimbrough with their hands and the butts of their guns.

44.  Plaintiff Rasmussen yelled for the police officers to stop assaulting Plaintiff Kimbrough.

45.  One of the Defendants took out his gun and fired the gun at Plaintiff Kimbrough.

46.  Plaintiff Kimbrough was struck in the head with the bullet and started to bleed.

47.  Plaintiff Rasmussen started to scream and moved toward the bed to determine if Plaintiff Kimbrough was alive, at which time, Defendant Nixon grabs Plaintiff Rasmussen by

6

the hair and smashed her head into the window sill several times causing Plaintiff Rasmussen's hair extensions to come out of her head.

48. Defendant Nixon then dragged Plaintiff Rasmussen out of the bedroom and threw her on the hallway floor where she landed face down, hitting her body and head against the floor.

49. Plaintiff Rasmussen got up and went to the kitchen where Police Officer John Doe grabbed her, threw her to the floor and got on top of her, pressing his knee into her back and slamming her head into the floor several times.

50. Defendants Police Officer Carerro, Detective Nixon, Sergeant Vanorden, Police Officer Mahony and Police Officers John Doe threw Plaintiff Kimbrough to the floor and continued to beat and assault him.

51. From the hallway Plaintiff Rasmussen and Plaintiff Carmen Kimbrough could see Defendants Police Officer Carerro, Detective Nixon, Sergeant Vanorden, Police Officer Mahony and Police Officers John Doe beat Plaintiff Kimbrough with night sticks and fists and kick him as he was lying bleeding on the bedroom floor.

52. Defendants Police Officer Carerro, Detective Nixon, Sergeant Vanorden, Police Officer Mahony and Police Officers John Doe then closed the bedroom door and kept Plaintiff Kimbrough alone in the room. From where they were in the kitchen, Plaintiff Rasmussen and Plaintiff Carmen Kimbrough could hear the beating continue.

53. The door to the bedroom was later opened by one of the Defendants and Plaintiff Rasmussen and Plaintiff Carmen Kimbrough could see Plaintiff Kimbrough lying on the floor and vomiting.

54. At some point during the incident while they are in the kitchen, both Plaintiff Rasmussen and Plaintiff Carmen Kimbrough attempted to call 911, but they were told by one of

7

the Defendants to hang up the phone.

55. Plaintiff Carmen Kimbrough watched in shock as her son was violently punched, beaten and kicked by Defendants, and she heard the shot of the gun.

56. Plaintiff Rasmussen was taken out of the apartment and placed inside a police car.

57. When Plaintiff Rasmussen was taken out of the apartment she informed Defendant Police Officer John Doe that she was diabetic and asked to be permitted to take her medication with her. Defendant John Doe informed her that they are not concerned about her medical condition and did not permit her to take her medication with her.

58. Plaintiff Rasmussen was then taken to the 72nd Precinct and was not given her medication. She was held at the precinct for many hours.

59. Plaintiff Rasmussen was then taken to Central Booking and held there for many hours without food or water. Due to the fact that she did not have her medication, she started to get faint. She asked a female corrections officer to help her, but the officer refused.

60. Plaintiff Rasmussen, remaining in police custody, was taken to Kings County Criminal Court and arraigned on March 8, 2008.

61. Plaintiff Kimbrough was taken to the hospital and treated for his injuries.

62. After being treated at the hospital, Plaintiff Kimbrough was taken to the police precinct and held there for many hours.

63. From the Precinct, Plaintiff Kimbrough was taken to the Central Booking where he was held for many hours prior to being arraigned in Kings County Criminal Court on March 8, 2008.

64. On or about April 14, 2009, and within ninety (90) days of the incident, a Notice of Claim on behalf of Plaintiff was served upon NYC.

8

65.  At least thirty (30) days have elapsed since said demand and/or claim upon which this action is in part predicated was presented to NYC for adjustment and NYC has neglected and/or refused to adjust and/or make payment.

66.  This action is commenced within one (1) year and ninety (90) days of the occurrence herein.

### FIRST CLAIM FOR RELIEF:
### DEPRIVATION OF FEDERAL CIVIL RIGHTS

67.  Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in paragraphs 1 through 66 with the same force and effect as if fully set forth herein.

68.  All of the aforementioned acts of Defendants, their agents, servants, and employees were carried out under color of state law.

69.  All of the aforementioned acts deprived Plaintiffs of the rights, privileges, and immunities guaranteed citizens of the United States by the Fourth, Fifth, Eight, and Fourteenth Amendments to the Constitution of the United States and in violation of 42 U.S.C. § 1983.

70.  The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto.

71.  The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and rules of NYC and the NYPD, all under the supervision of ranking officers of said department.

72.  Defendants, collectively and individually, while acting under color of state law, engaged in conduct which constituted a custom, usage, practice, procedure, or rule of his/her

9

respective municipality/authority, which is forbidden by the Constitution of the United States.

73. By these actions, these Defendants have deprived Plaintiffs of rights secured by the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983, for which the Defendants are individually and jointly liable.

**SECOND CLAIM FOR RELIEF:**
**EXCESSIVE FORCE UNDER 42 U.S.C. § 1983**

74. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in paragraphs 1 through 73 with the same force and effect as if fully set forth herein.

75. The degree of force used by Defendants was excessive, unreasonable, and unwarranted.

76. Defendants' actions were intentional, willful, malicious, egregious, grossly reckless and negligent, unconscionable, and unprovoked.

77. As a result of the excessive force and brutality, Plaintiffs Kimbrough and Rasmussen sustained substantial pain, bruising, and swelling about their faces, heads, and bodies and serious emotional and psychological distress.

78. All of the aforementioned acts of the Defendants constituted excessive force under the laws of the State of New York and the Defendants are liable said damage. Pursuant to 28 U.S.C. § 1367, this Court has pendant jurisdiction to hear and adjudicate such claims.

**THIRD CLAIM FOR RELIEF:**
**ASSAULT AND BATTERY**

79. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in paragraphs 1 through 78 with the same force and effect as if fully set forth herein.

80. By the aforementioned actions, the Defendants did inflict assault and battery upon the Plaintiffs. The acts and conduct of the Defendant Police Officers were the direct and

10

proximate cause of injury and damage to the Plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

81. As a result of the foregoing, Plaintiffs were deprived of their liberty, suffered specific bodily injury, pain and suffering, great humiliation, mental anguish, costs, and expenses and were otherwise damaged and injured.

**FOURTH CLAIM FOR RELIEF:**
**FALSE ARREST**

82. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in paragraphs 1 through 81 with the same force and effect as if fully set forth herein.

83. As a result of Defendants' aforementioned conduct, Plaintiffs  were subject to an illegal, improper, and false seizure and arrest by the Defendants and taken into custody and caused to be falsely imprisoned, detained, confined, incarcerated, and prosecuted by the Defendants in criminal proceedings, without any probable cause, privilege, or consent.

84. As a result of their false arrest, Plaintiffs were subjected to humiliation, mental anguish, ridicule, and disgrace and were deprived of their liberty.  Plaintiffs were discredited in the minds of many members of the community.

85. All of the aforementioned acts of the Defendants constituted false arrest under the laws of the State of New York and the Defendants are liable for said damage.  Pursuant to 28 U.S.C. § 1367, this Court has pendant jurisdiction to hear and adjudicate such claims.

**FIFTH CLAIM FOR RELIEF:**
**FALSE IMPRISONMENT**

86. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in paragraphs 1 through 85 with the same force and effect as if fully set forth herein.

87. As a result of their false imprisonment, Plaintiffs were subjected to humiliation,

11

ridicule, mental anguish and disgrace and were deprived of their liberty. Plaintiffs were discredited in the minds of many members of the community.

88. All of the aforementioned acts of the Defendants constituted false imprisonment under the law of the State of New York and the Defendants are liable said damage. Pursuant to 28 U.S.C. § 1367, this Court has pendant jurisdiction to hear and adjudicate such claims.

## SIXTH CLAIM FOR RELIEF:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

89. Plaintiffs repeat, reiterate and re-allege each and every allegation contained in paragraphs numbered 1 through 88 with the same force and effect as if fully set forth herein.

90. Defendants NYC, Defendants Police Officer Carerro, Detective Nixon, Sergeant Vanorden, Police Officer Mahony and Police Officers John Doe engaged in extreme and outrageous conduct beyond all possible bounds of decency when they beat Plaintiff Kimbrough and shot him in the head in the presence of Plaintiff Carmen Kimbrough and Plaintiff Nastazja Friis Rasmussen.

91. Defendants' extreme and outrageous conduct was intended to inflict severe distress upon Plaintiff Carmen Kimbrough and Plaintiff Nastazja Friis Rasmussen when they shot Plaintiff Kimbrough in the head in their presence.

92. Defendants Police Officer Carerro, Detective Nixon, Sergeant Vanorden, Police Officer Mahony and Police Officers John Doe's outrageous conduct did inflict severe distress upon Plaintiff Carmen Kimbrough, which caused Plaintiff Carmen Kimbrough to suffer anxiety and depression, and upon Plaintiff Nastazja Friis Rasmussen, which caused her to experience exasperation of her existing diabetic condition and severe anxiety.

93. All of the aforementioned acts of the Defendants constituted intentional infliction of

12

emotional distress under the law of the State of New York and the Defendants are liable for said damage. Pursuant to 28 U.S.C. § 1367, this Court has pendant jurisdiction to hear and adjudicate such claims.

**SEVENTH CLAIM FOR RELIEF:**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

94.    Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in paragraphs 1 through 93 with the same force and effect as if fully set forth herein.

95.  Plaintiff Carmen Kimbrough, Plaintiff Kimbrough's mother, is a close family member of the injured party, Plaintiff Kimbrough.

96.  Plaintiff Carmen Kimbrough was standing in the zone of danger where the Defendant Police Officers inflicted a severe beating upon Plaintiff Kimbrough and shot Plaintiff Kimbrough in the head.

97.  Plaintiff Carmen Kimbrough observed both the severe beating and gunshot injury of her son, Plaintiff Kimbrough, in real time.

98.  The Defendant Police Officers' conduct did inflict severe distress upon Plaintiff Carmen Kimbrough, which caused Plaintiff Carmen Kimbrough to suffer severe anxiety and depression.

99.  All of the aforementioned acts of the Defendants constituted negligent infliction of emotional distress under the law of the State of New York and the Defendants are liable for said damage. Pursuant to 28 U.S.C. § 1367, this Court has pendant jurisdiction to hear and adjudicate such claims.

13

## EIGHTH CLAIM FOR RELIEF:
## MUNICIPAL LIABILITY

100.   Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in paragraphs 1 through 99 with the same force and effect as if fully set forth herein.

101.  Defendant Police Officers used excessive and unreasonable force during the stop, search, and arrest of Plaintiffs despite a lack of force or resistance by Plaintiffs, notwithstanding his knowledge that said force would jeopardize Plaintiffs' liberty, well-being, safety, and constitutional rights.

102.  Defendant Police Officer John Doe failed to protect Plaintiffs from the violation of their civil and constitutional rights by Defendants Police Officer Carrero, Detective Nixon, Sergeant Vanorden, Police Officer Mahony's use of excessive and unreasonable force against Plaintiffs.

103.  The acts complained of were carried out by the aforementioned Defendants in their capacities as police officers and officials, with the entire actual and/or apparent authority attendant thereto.

104.  The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of NYC and the NYPD, all under the supervision of ranking officers of said department.

105.  The aforementioned customs, policies, usages, practices, procedures, and rules of NYC and the NYPD included, but were not limited to, initiating and continuing criminal proceedings without evidence of criminal activity.

106.  The foregoing customs, policies, usages, practices, procedures, and rule of NYC

14

and the NYPD constituted deliberate indifference to the safety, well-being, and constitutional rights of Plaintiffs.

107.  The foregoing customs, policies, usages, practices, procedures, and rule of NYC and the NYPD were the proximate cause of the constitutional violations suffered by Plaintiffs as alleged herein.

108.  The foregoing customs, policies, usages, practices, procedures, and rule of NYC and the NYPD were the moving force behind the constitutional violations suffered by Plaintiffs as alleged herein.

109.  Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating the constitutional rights of Plaintiffs.

110.  Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers and were directly responsible for the violation of Plaintiffs' constitutional rights.

111.  Defendant NYC, as municipal policymaker in the training and supervision of Defendant police officers, has pursued a policy and custom of deliberate indifference to the rights of persons in their domain who suffer violations of their freedom from the excessive use of force and unreasonable force and freedom from deprivation of Liberty without Due process of law in violation of the Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983, and the Constitution and laws of the State of New York.

112.  All of the foregoing acts by Defendants deprived Plaintiffs' of federally protected rights, including, but not limited to, the right:

      a.      Not to be deprived of liberty without due process of law;

      b.      To be free from unreasonable search and seizure under the Fourth and

Fourteenth Amendments to the United States Constitution;

c.   To be protected against violations of her civil and constitutional rights;

d.   To be free from intentional assault, battery, and infliction of emotional distress;

e.   Not to have cruel and unusual punishment imposed upon her; and

f.   To receive equal protection under the law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and prays for the following relief, jointly and severally, against the Defendants:

1.  Special and compensatory damages in the amount of ONE MILLION ($1,000,000.00) DOLLARS; and

2.  Punitive damages in the amount of FIVE MILLION ($5,000,000.00) DOLLARS; and

3.  Reasonable attorney's fees and costs; and

4.  Such other and further relief as this Court deems just and proper.

DATED:   New York, New York
         March 3, 2010

Respectfully submitted,

Jane Byrialsen, Esq. (JB9108)

FISHER & BYRIALSEN, PLLC
*Attorney for Plaintiff*
291 Broadway, Suite 709
New York, New York 10007
Tel: (347) 284-0187
Fax: (347) 284-0190

16