Docket No.  10 Civ. 1088 (BMC)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NASTAZJA   FRIIS   RASMUSSEN   and   IVAN
KIMBROUGH and CARMEN KIMBROUGH,

Plaintiffs,

-against-

THE CITY OF NEW YORK, POLICE OFFICER
CHRISTOPHER CARRERO, DETECTIVE JOHN R.
NIXON, SERGEANT JOHN VANORDEN, POLICE
OFFICER JAMES MAHONY, SERGEANT ROGER
PEREZ, POLICE OFFICERS JOHN DOE, Individually
and in their Official Capacities,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

**MICHAEL A. CARDOZO**
*Corporation Counsel of the City of New York*
*Attorney for the City Defendants*
*100 Church Street*
*New York, N.Y.  10007*

Of Counsel: Katherine E. Smith
Tel:  (212) 513-0462
NYCLIS No.

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .........................................................................IV-IX
PRELIMINARY STATEMENT ................................................................. 1
STANDARD OF REVIEW .................................................................... 1-2
STATEMENT OF FACTS ..................................................................... 2

ARGUMENT

POINT I

RASMUSSEN'S ARREST WAS LAWFUL.......................................... 2-5

POINT II

SUMMARY JUDGMENT IS APPROPRIATE ON SOME OF IVAN'S AND
ALL OF RASMUSSEN'S FORCE CLAIMS ...................................... 5

   1. Ivan's Force Claims ............................................................ 6

      a. The Accidental Discharge of Defendant
         Vanorden's Firearm ................................................ 6-8
      b. Plaintiff has failed to establish that the
         force officers used to place him in
         handcuffs was unreasonable ................................... 8-9

   2. The Use of Force on Plaintiff Rasmussen was
      Reasonable ...................................................................... 10

      a. Force Used to Remove Plaintiff
         Rasmussen from the Room ..................................... 10
      b. Force Used to Handcuff Rasmussen ...................... 11

   3. Plaintiff's lack of physical injuries................................ 11-12

POINT III
PLAINTIFFS' MONELL CLAIM FAILS. ................................... 13-17

   1. Failure to Train or Supervise...................................... 13-16

2. Initiating and Continuing Criminal Proceedings
in the Absence of Probable Cause ....................................... 16-17

POINT IV
RASMUSSEN'S IIED CLAIM FAILS............................................................ 17-18

POINT V
PLAINTIFF RASMUSSEN'S DUE PROCESS CLAIM FAILS .................. 18-21

1. Need for Medical Treatment .......................................................... 19-20

2. Plaintiff cannot demonstrate deliberate
indifference ........................................................................ 20-21

POINT VI
PERSONAL INVOLVEMENT.................................................................... 21-22

POINT VII
QUALIFIED IMMUNITY ............................................................................ 22-25

# TABLE OF AUTHORITIES

**Cases** **Pages**

Anderson v. Creighton,
   483 U.S. 635 (1987) ............................................................................................23

Ashcroft v. Iqbal,
   129 S. Ct. 1937 (2009) .......................................................................................21

Araujo v. City of New York,
   2010 U.S. Dist. LEXIS 26082 (E.D.N.Y. Mar. 19, 2010) ...................................21

Baker v. Willet,
   42 F. Supp. 2d 192 (N.D.N.Y. 1999) ..................................................................16

Batista v. Rodriguez,
   702 F.2d 393 (2d Cir. 1983) ...............................................................................16

Beatty v. Davidson,
   713 F. Supp. 2d 167 (W.D.N.Y. 2010) ...............................................................19

Board of the County of Comm'rs of Bryan County v. Brown,
   520 U.S. 397 (1997) ...........................................................................................14

Bradley v. Village of Greenwood Lake,
   376 F. Supp. 2d 528 (S.D.N.Y. 2005).................................................................9

Bryant v. Maffucci,
   923 F.2d 979 (2d Cir. 1991) ...............................................................................18

Burge v. Parish of St. Tammy,
   187 F.3d 452 (5th Cir. 1999) ..............................................................................15

Busch v. City of New York,
   00 CV 5211 (SJ), 2003 U.S. Dist. LEXIS 27571 (E.D.N.Y. Sept. 11, 2003) ........18

Caiozzo v. Koreman,
   581 F.3d 63 (2d Cir. 2009) .................................................................................18

Caldarola v. Calabrese,
   298 F.3d 156, 162 (2d Cir. 2002) .......................................................................23,24

**Cases**                                                                                      **Pages**

Cameron v. City of New York,
  598 F.3d 50, 68 (2d Cir. 2010) ...............................................................................3.4

Cartier v. Lussier,
  955 F.2d 841, 846 (2d Cir. 1992) ..............................................................................23

Celotex Corp. v. Catrett,
  477 U.S. 317, 322-23 (1986) ......................................................................................1

City of Canton v. Harris,
  489 U.S. 378, 388 (1989) ...............................................................................13,14,15

City of St. Louis v. Praprotnik,
  485 U.S. 112, 127-30 (1985) .....................................................................................13

Cuadrado v. City of New York,
  05 Civ. 10706 (PKC), 2007 U.S. Dist. LEXIS 60045 (S.D.N.Y. Aug. 15, 2007) ...................8

Daniels v. Williams,
  474 U.S. 327, 328 (1986) ............................................................................................6

DeGondea v. West
  04 Civ. 7457 (GBD) (DF), 2010 U.S. Dist. LEXIS 128206 (S.D.N.Y. June 1, 2010) ............4

Devenpeck v. Alford,
  543 U.S. 146  (2004) ..................................................................................................2

Diaz v. City of New York,
  00 CV 2944 (JMA), 2006 U.S. Dist. LEXIS 93923 (E.D.N.Y. Dec. 29, 2006) ...................12

Dodd v. City of Norwich,
   815 F.2d 862, modified on reh'g, 827 F.2d 1(2d Cir. 1987) .................................6,7

Dwares v. City of New York,
  985 F.2d 94  (2d Cir. 1993) ......................................................................................13

Eastman Kodak Co. v. Image Tech. Servs., Inc.,
  504 U.S. 451 (1992) ...................................................................................................1

Finigan v. Marshall,
  574 F.3d 57, 62 (2d Cir. 2009) ...................................................................................2

Garcia v. Greco,
  05 Civ. 9587 (JFK), 2010 U.S. Dist. LEXIS 11106 (S.D.N.Y. Feb. 9, 2010) .......................11

**Cases**                                                                          **Pages**

Graham v. Connor,
   490 U.S. 386, 395 (1989)........................................................................................5

Griffin v. City of New York,
   287 F. Supp.2d 392 (S.D.N.Y. 2003) ...................................................................16

Hazan v. The City of New York,
   No. 98 Civ. 1716, 1999 U.S. Dist. LEXIS 10499 (S.D.N.Y. July 9, 1999) ...........................17

Hoffman v. County of Delaware,
   41 F. Supp. 195 (N.D.N.Y. 1999) .........................................................................16

Husbands v. City of New York,
   05 Civ. 9252 (NRB), 2007 U.S. Dist. LEXIS 61042 (S.D.N.Y. Aug. 16, 2007) ..............4,5,8

Husbands v. City of New York,
   335 Fed. Appx. 124, 127 (2d Cir. 2009) .................................................................4

Illinois v. Gates,
   462 U.S. 213, 245 (1983) ....................................................................................2

In re Marcel F.,
   233 A.D.2d 442, 442-443 (N.Y. App. Div. 2d Dep't 1996) .......................................5

Johnson v. County of Nassau,
   2010 U.S. Dist. LEXIS 101752 at *8-9 (E.D.N.Y. Sept. 27, 2010) ...........................11

Ladner v. City of New York,
   20 F.Supp. 2d 509 (E.D.N.Y. 1998) .....................................................................15

Loria v. Gorman,
   306 F.3d 1271 (2d Cir. 2002) ..............................................................................3

Loria v. Irondequoit,
   775 F. Supp. 599 (W.D.N.Y. 1990) .......................................................................7

Lydeatte v. Bronx Overall Econ. Dev. Corp.,
   No. 00 Civ. 5433, 2001 U.S. Dist. LEXIS 1670 (S.D.N.Y. Feb. 22, 2001) ...................17

Martin v. Citibank, N.A.,
   762 F.2d 212 (2d Cir. 1985) ...............................................................................17

Martin v. City of New York,
   627 F. Supp. 892 (E.D.N.Y. 1985) .......................................................................14

**Cases**                                                                                  **Pages**

McAllister v. New York City Police Department,
    49 F. Supp.2d 688 (S.D.N.Y. 1999) ................................................................11,15

Mitchell v. Forsyth,
    472 U.S. 511(1985) ................................................................................................23

Monell v. Department of Social Services,
    436 U.S. 658 (1978) ..............................................................12, 13, 14, 16, 17

Moore v. City of New York,
    219 F. Supp. 2d 335 (E.D.N.Y. 2002) ...................................................................17

Morrissey v. City of New York,
    963 F. Supp. 270 (S.D.N.Y. 1997) .......................................................................14

Mroz v. City of Tonawanda,
    999 F. Supp. 436 (W.D.N.Y. March 31, 1999) .....................................................19

New York v. Greene,
    634 N.Y.S.2d 144 (N.Y. App. Div., 2d Dept., 1995) ............................................4

Oklahoma City v. Tuttle,
    471 U.S. 808 (1985) ...............................................................................................4

O'Neill v. Krzeminski,
    839 F.2d 9 (2d Cir. 1988) ......................................................................................6

Pearson v. Callahan,
    129 S. Ct. 808 (2009) ...........................................................................................23

Pembaur v. City of Cincinnati,
    475 U.S. 469 (1986) .............................................................................................13

People v. Tarver,
    188 A.D.2d 938, 591 N.Y.S.2d 907 (N.Y. App. Div., 3rd Dep't 1992) ...................4

Phelps v. Szubinski,
    577 F. Supp. 2d 650 (E.D.N.Y. 2008) ..................................................................11

Polite v. Town of Clarkstown,
    120 F. Supp.2d 381 (S.D.N.Y. 2000) ...................................................................14

Ricciuti v. N.Y.C. Transit Auth.,
    941 F.2d 119 (2d Cir. 1991) .................................................................................14

**Cases**                                                                                                  **Pages**

Russo v. Port Auth.,
    2008 U.S. Dist. LEXIS 79032 (E.D.N.Y. Sept. 30, 2008) ................................................5, 18

Salim v. Proulx,
    93 F.3d 86 (2d Cir. 1996) ...................................................................................11

Santiago v. C.O. Campisi,
    91 F. Supp. 2d 665 (S.D.N.Y. 2000) ......................................................................11

Saucier v. Katz,
    533 U.S. 194 (2001) ......................................................................................23, 24

Sorlucco v. New York City Police Department,
    971 F.2d 864 (2d Cir. 1992) ...............................................................................13

Stephenson v. Doe,
    332 F.3d 68 (2d Cir. 2003) .................................................................................24

Stuto v. Fleishman,
    164 F.3d 820 (2d Cir. 1999) ...............................................................................17

Tracy v. Freshwater,
    623 F.3d 90  (2d Cir. 2010) ..................................................................................9

Walker v. City of New York,
    974 F.2d 293 (2d Cir. 1992) .........................................................................13,14,15

Weyant v. Okst,
    101 F.3d 845 (2d Cir. 1996) ...............................................................................2,4

Williams v. City of N.Y. Police Dep't,
    06 Civ. 6053 (BMC), 2007 U.S. Dist. LEXIS 63455 (E.D.N.Y. Aug. 24, 2007) ...................4

Wright v. Smith,
    21 F.3d 496 (2d Cir. 1994) ...............................................................................19, 21

Ying Jing Gan v. City of New York,
    996 F.2d 522 (2d Cir. 1993) ..................................................................................2

Zahra v. Town of Southold,
    48 F.3d 674 (2d Cir. 1995) .................................................................................12

## <u>Statutes</u>

Fed. R. Civ. P. 56 ..................................................................................................1

Fed. R. Civ. P. 25(a)(1) ..........................................................................................1

N.Y. Penal Law. § 195.05.....................................................................................2, 3

New York Penal Law § 240.26 ...............................................................................3,5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- X
NASTAZJA FRIIS RASMUSSEN and IVAN
KIMBROUGH and CARMEN KIMBROUGH,

                                 Plaintiffs,

                 -against-                      10 Civ. 1088 (BMC)

THE CITY OF NEW YORK, et al.,

                                 Defendants.

---------------------------------------------------------------------- X

## DEFENDANTS' MEMORANDUM OF LAW

### PRELIMINARY STATEMENT

       Plaintiffs Nastazja Friis Rasmussen ("Rasmussen") and Ivan Kimbrough ("Ivan"), bring this action, against defendants City of New York, Nixon, Vanorden, Mahoney, Perez and Carrero.[1] Defendants move herein for partial summary judgment.

### RULE 56 STANDARD FOR SUMMARY JUDGMENT

       Under Rule 56(c), summary judgment is warranted when, viewing the evidence in the light most favorable to the non-movant, the Court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; Eastman Kodak Co. v. Image Tech. Servs., Inc., 504 U.S. 451, 457 (1992). A motion for summary judgment requires the party with the burden of proof at trial to "make a showing sufficient to establish the existence of an element essential to that party's case . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23

---

[1] As set forth in defendants' answers dated May 19, 2010 and September 8, 2010, defendant Carrero is deceased. As more than 90 days have passed since defendants informed plaintiffs that defendant Carrero is deceased, and since plaintiffs have failed to substitute a new party to replace him, defendants respectfully submit that all claims brought against defendant Carrero must be dismissed. See Fed. R. Civ. P. 25(a)(1).

(1986). Hence, the non-moving party must produce evidence to support his case and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993).

## STATEMENT OF FACTS

For a complete statement of relevant facts, defendants respectfully refer the Court to their Local Civil Rule 56.1 Statement of Undisputed Facts.

## ARGUMENT

### POINT I

### RASMUSSEN'S ARREST WAS LAWFUL

Under either § 1983 or state law, probable cause is a complete defense to a false arrest claim. Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). "Probable cause exists when, based on the totality of circumstances, the officer has 'knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested.'" Finigan v. Marshall, 574 F.3d 57, 62 (2d Cir. 2009)(citation omitted). The inquiry into probable cause "is an objective one that focuses on the facts available to the arresting officer at the time of the arrest." Finigan, 574 F.3d at 62 (citing Jaegly v. Couch, 10 439 F.3d 149, 154 (2d Cir. 2006)). As long as there   . As long as the police had probable cause to arrest the suspect for *any* offense, regardless of whether the arrestee was actually charged with that offense, the arrest is lawful. Devenpeck v. Alford, 543 U.S. 146, 153 (2004)). A probable cause determination requires only a probability of criminal activity, not an actual showing that the arrestee took part in a crime. Illinois v. Gates, 462 U.S. 213, 245 (1983).

Here, even when viewing the facts in the light most favorable to plaintiffs, there was probable cause to arrest Rasmussen for, *inter alia,* obstruction of governmental administration ("OGA"), N.Y. Penal Law. § 195.05, and harassment in the second degree, New

2

York Penal Law § 240.26.  Under New York law, OGA occurs when an individual prevents or attempts to prevent a public servant from performing an official function by means of, *inter alia*, intimidation, physical force or interference, or an independently unlawful act.  N.Y. Penal Law. § 195.05.  An arrest is only an "official function" under New York law if it is lawful—that is, if it is made with probable cause.  Cameron v. City of New York, 598 F.3d 50, 68 (2d Cir. 2010).

Here, Rasmussen attempted to physically prevent officers from effecting the lawful arrest of Ivan.  Ivan admits that he had marijuana on his person and ran from officers Nixon and Vanorden while they were attempting to place him under arrest. (Defendants' Rule 56.1 Statement ("56.1"), ¶¶ 3,5)  Ivan ran into his apartment and hid from the police who were knocking at his apartment door.  (56.1 ¶ 6,14).  When officers Vanorden and Nixon entered the apartment they proceeded to the back bedroom where they Ivan was hiding in a closet.  (56.1, ¶¶ 14-16).  A struggled ensued while officers attempted to apprehend Ivan, and Vanorden accidently discharged a round from his service weapon.  (56.1 ¶¶ 19-35)  As the officers were struggling with Ivan, Rasmussen was screaming, took a step or two towards the officers and tried to get between Ivan and the officers effecting his arrest. (56.1 ¶ 38).  In fact, Rasmussen admits that she pushed the officers' hands away from Ivan, while Ivan testified that the Rasmussen interfered by pushing the officers away from him.   (56.1 ¶¶ 39-43).   Ivan testified that Rasmussen tired to jump on the officers. (56.1 ¶ 42).  Moreover, both Rasmussen and Ivan concede that Rasmussen's hands and arms made contact with the officers.  (56.1 ¶ 40).  In fact, Rasmussen herself admits that she was "interfering with what [the officers were] doing . . . ." (56.1 ¶ 43).

The arrest of Ivan was an "official function" because it was authorized and supported by probable cause.  See Cameron, 598 F.3d at 68; Loria v. Gorman, 306 F.3d 1271, 1282 (2d Cir. 2002) (official function obstructed must be authorized by law, or supported by probable cause).  When the official function is effecting an arrest, courts look to whether the

arrest was made with probable cause. <u>Cameron</u>, 598 F.3d at 68; <u>New York v. Greene</u>, 634 N.Y.S.2d 144, 145 (N.Y. App. Div., 2d Dept., 1995) (arrest of defendant who "became involved in a physical altercation with several police officers" in an effort "to prevent them from issuing a desk appearance ticket to another individual" was only lawful if issuing the ticket was "authorized" conduct).   Here, Ivan pled guilty to disorderly conduct (56.1 ¶ 67), which conclusively establishes that there was probable cause for his arrest. <u>See, e.g.</u>, <u>Weyant</u>, 101 F.3d at 852; <u>Williams v. City of N.Y. Police Dep't</u>, 06 Civ. 6053 (BMC), 2007 U.S. Dist. LEXIS 63455, *2-3 (E.D.N.Y. Aug. 24, 2007)(plaintiff's plea to disorderly conduct "conclusively establishes that there was probable cause for his arrest")(internal citation omitted).

Accordingly, Rasmussen's attempts to interfere in Ivan's arrest were sufficient to establish probable cause for OGA. <u>See</u> <u>Husbands v. City of New York</u>, 05 Civ. 9252 (NRB), 2007 U.S. Dist. LEXIS 61042, at *43-45 (S.D.N.Y. Aug. 16, 2007) (finding probable cause to arrest for OGA where police were struggling with an individual who was lying face down on the ground, since "it follows that any disturbance of the officers - by attempting to speak to [the individual the police were struggling with], and by taking a step toward the officers - may be viewed as sufficient interference" for purposes of OGA) <u>aff'd</u>  335 Fed. Appx. 124 (2d Cir. 2009); <u>People v. Tarver</u>, 188 A.D.2d 938, 591 N.Y.S.2d 907 (N.Y. App. Div., 3rd Dep't 1992) (finding OGA where defendant threateningly approached the back of police officer struggling with suspect).   Moreover, the fact that Rasmussen claims to have interceded in order to protect plaintiff Ivan from excessive force does not negate the probable cause to arrest her for OGA. <u>See</u> <u>DeGondea v. West</u>, 04 Civ. 7457 (GBD) (DF), 2010 U.S. Dist. LEXIS 128206 at *95-96 (S.D.N.Y. June 1, 2010) ("The cases cited by Petitioner all indicate that New York's 'excessive force' exception permits the use of justifiable force to resist excessive police force against *oneself*; Petitioner cites no precedent to support the view that this exception may apply in the context of force used against a third party . . . and this Court has found none.) (emphasis in

4

original); Husbands, 2007 U.S. Dist. LEXIS 61042, at *34-39, *43-45 (finding probable case to arrest for OGA even when plaintiff attempted to intervene in the arrest of co-plaintiff who alleged that officers used excessive force to effectuate his arrest).

Even assuming, *arguendo*, that there was not probable cause to arrest plaintiff Rasmussen for OGA, there was probable cause to arrest Rasmussen for harassment in the second degree, N.Y. Penal L. § 240.26, because it is uncontested that she pushed officers and hit them with her hands. (56.1 ¶¶ 39-41).   New York State Courts have held that intent to cause physical injury can be inferred when the arrestee attempts to hit officers even if no injury was actually inflicted.  In re Marcel F., 233 A.D.2d 442, 442-443 (N.Y. App. Div. 2d Dep't 1996)(citations omitted).  Accordingly, defendants are entitled to summary judgment on plaintiff Rasmussen's false arrest claims brought under both state and federal law.

## POINT II

### SUMMARY JUDGMENT IS APPROPRIATE ON SOME OF IVAN'S AND ALL OF RASMUSSEN'S FORCE CLAIMS

Courts have long recognized that a police officer's right to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Russo v. Port Auth., 2008 U.S. Dist. LEXIS 79032, at *12 (E.D.N.Y. Sept. 30, 2008) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)).  Where a use of force in the context of an arrest is alleged to be excessive, the claim must be analyzed under the "objective reasonableness" standard of the Fourth Amendment. Graham, 490 U.S. at 395.  In evaluating whether a use of force is reasonable, the court must consider "the facts and circumstances of [that] particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.  This evaluation must be made from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of

hindsight." Id. The Supreme Court emphasized that "allowance [must be made] for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." Id. at 396-97. In addition, "although the severity of plaintiff's alleged injuries is not dispositive, it is nonetheless highly relevant to the reasonableness of the force applied." Garcia v. Greco, 2010 U.S. Dist. LEXIS 11106 at *18 (S.D.N.Y. Feb. 9, 2010)(quotation omitted).

1.   Ivan's Force Claims

Based on a review of Ivan's testimony in this matter, it appears that his excessive force claim is based on several purported applications of force: (1) an alleged initial punch by defendant Nixon when Ivan came out of the closet with his hands purportedly raised in the air (56.1 ¶¶ 19-20); (2) force allegedly used on the bed by defendant Nixon to place Ivan in handcuffs (56.1 ¶¶ 21-28); (3) the discharge of defendant Vanorden's service weapon which allegedly caused a bullet hit Ivan's head (56.1 ¶¶ 35, 51-53) and (4) alleged kicks, punches and being thrown onto a shelf by officers after Ivan was handcuffed (56.1 ¶¶ 55-58). With respect to Ivan, defendants move on two, distinct, applications of force: (a) the alleged shooting of Ivan and (b) and any force used by defendant officers' to effectuate Ivan's handcuffing.

a) The Accidental Discharge of Defendant Vanorden's Firearm

Plaintiffs allege that defendant Vanorden used excessive force by shooting Ivan in the head. (Amended Complaint, annexed to the Declaration of Katherine E. Smith ("Smith Decl.") as Exhibit "B" at ¶¶45-46). In order to maintain a §1983 excessive force claim, the alleged excessive force must be intentional – not merely negligent. Dodd v. City of Norwich, 815 F.2d 862, modified on reh'g, 827 F.2d 1, 7-8 (2d Cir. 1987)("The fourth amendment . . . only protects individuals against "unreasonable" seizures, not seizures conducted in a "negligent" manner.); O'Neill v. Krzeminski, 839 F.2d 9, 11 n.1 (2d Cir. 1988). See also Daniels v. Williams, 474 U.S. 327, 328 (1986). Accordingly, an accidental shooting by a police officer

6

cannot be a basis for a Fourth Amendment excessive force claim.  See Dodd, 827 F.2d at 7

(affirming dismissal of excessive force claim predicated on an unintentional shooting because

"[i]t makes little sense to apply a standard of reasonableness to an accident.").  A discharge of an

officer's weapon is an accident – or unintentional  - unless the officer drew weapon intending on

using it or intended to fire the weapon at the time of discharge.  See Loria v. Irondequoit, 775 F.

Supp. 599, 604 (W.D.N.Y. 1990).

   The record in the instant action is devoid of any evidence that the discharge of

defendant Vanorden's service weapon was intentional.   Here, officers chased Ivan into his

apartment, where he hid in a closet. (56.1 ¶¶ 7, 12, 14).   When officer Vanorden and Nixon

entered the apartment they proceeded to the back bedroom where they could hear loud breathing.

(56.1 ¶¶ 15-16).  Vanorden drew his weapon because he did not know if the person hiding in the

closet, whom had just fled from the police, possessed any weapons or posed a danger to himself

or others.  (56.1 ¶ 17)

   At this point, defendants and plaintiffs version of what occurred diverge –

however, for the purposes of this motion only, accepting plaintiffs' version as true, the record is

clear that the Vanorden did not intentionally discharge his firearm.   Plaintiffs maintain that

Vanorden was near the entrance to the back room. (56.1 ¶ 29).   According to Rasmussen,

Vanorden pointed his gun at Ivan and defendant Nixon who were struggling on the bed across

the room. (56.1 ¶ 31).  Ivan maintains that Nixon was behind plaintiff, on the bed, grabbing both

of Ivan's arms, with his left leg across Ivan's body and his right leg half on the bed and half on

the floor at the time Vanorden's round discharged. (56.1 ¶ 33).  In fact, Rasumssen – the only

plaintiff who alleges that she actually saw Vanorden discharge his weapon - stated that

"Vanorden ... was shocked when the gun went off." (56.1 ¶¶ 37).  Importantly, throughout her

deposition, Rasmussen on at least three occasions noted that with respect to the gun shot, that

Vanorden appeared to be "shocked," "surprised" and "didn't know what he was doing, he looked

in shock himself after that gun went off." (56.1 ¶¶ 37). These observation and allegations are consistent with negligence – not an intentional act. Moreover, Vanorden testified that the shooting was accidental. (56.1 ¶ 35).

Furthermore, the fact that plaintiffs claim that Nixon was on top of Ivan when Vanorden discharged his service weapon, is additional evidence that the gun shot was accidental. If Vanorden intentionally attempted to shoot Ivan, he would have been aiming directly at Nixon. It defies reason that Vanorden would intentionally attempt to shoot Ivan in the head if his partner was where plaintiff claims him to be, especially when Vanorden did not believe that the use of deadly force was necessary. (56.1 ¶ 36). Moreover, as Vanorden did not believe that the use of deadly force was necessary, there is no identifiable reason for Vanorden to have intentionally fired at Ivan. (56.1 ¶¶ 35-36). If the shot had been intended to kill, then Vanorden would have fired again upon realizing that he had missed the first time. His failure to do so is further indication that the gun discharge was accidental. Accordingly, defendant Vanorden is entitled to summary judgment on this claim. Moreover, even if the Court finds disputes of fact as to whether or not the shooting was accidental, defendants Nixon, Mahoney and Perez should still be entitled to summary judgment on this claim, since they had no reasonable opportunity to stop this one shot from being fired, especially since it discharged without any warning.

b)  The Force Used to Place Ivan in Handcuffs was Reasonable

Ivan also alleges that Nixon used excessive force when he punched, kicked and used a blunt object to hit him while attempting to place his hands in handcuffs. Where an officer is prevented from bringing a suspect's hands behind his back for handcuffing, the officer is entitled to use force in order to make the arms available. See, Husbands, 2007 U.S. Dist. LEXIS 61042 at *35-36(dismissing excessive force claim where punch by police officer to was delivered "so as to free …[suspect's] arms" for handcuffing); Cuadrado v. City of New York, 05 Civ. 10706 (PKC), 2007 U.S. Dist. LEXIS 60045, at *8-11 (S.D.N.Y. Aug. 15, 2007) (holding,

in context of an Eighth Amendment excessive force claim, correction officer entitled to use force in order to get inmate to free arm for handcuffing).

      While plaintiff denies in a conclusory manner that he was resisting arrest, he admits that he was moving while Nixon was attempting to place him in handcuffs and that he prevented his right hand from being cuffed. (56.1 ¶¶ 25-26). Ivan maintains that Nixon grabbed plaintiff with one free hand and fell onto the bed with Ivan. (56.1 ¶ 21). Next, Ivan contends that Nixon hit him in the head with his gun while placing Ivan's left hand in handcuffs. (56.1 ¶ 24). Ivan admits his right arm remained under his body while Nixon was attempting to place his hands in handcuffs. (56.1 ¶ 25). Next, Ivan contends that Nixon hit him one more time while attempting to grab plaintiff's un-cuffed right hand. (56.1 ¶ 28). Ivan admits that he was moving his head and body while on the bed. (56.1 ¶ 26). In fact, Rasmussen testified that she saw Ivan attempt to raise his upper body off of the bed, arch his back and lift his legs. (56.1 ¶ 27).

      Viewing the record in the light most favorable to plaintiffs, the force used by Nixon to place Ivan in handcuffs does not constitute excessive force. Falling to the bed with Ivan and delivering two blows while attempting to place Ivan -- who admittedly moved and refused to have both hands placed in handcuffs - in handcuffs, is objectively reasonable under the circumstances. See, e.g., Tracy v. Freshwater, 623 F.3d 90, 96-97 (2d Cir. 2010) (finding no excessive when officer hit plaintiff twice with his flashlight prior to placing plaintiff in handcuffs). The fact that plaintiff admittedly fled from officers, led them on a foot chase and then hid in his closet put officers in a heighted sense of security and further justifies the use of force to place plaintiff in handcuffs. (56.1 ¶¶ 4-5); Bradley v. Village of Greenwood Lake, 376 F. Supp. 2d 528, 535 (S.D.N.Y. 2005) (force not excessive where officer kicked plaintiff stomach, threw him to the ground and handcuff plaintiff who had run and hid from officers). Accordingly, because the force used by Nixon was objectively reasonable under the circumstances, Nixon is entitled to summary judgment on this claim.

2.  The Use of Force on Plaintiff Rasmussen was Reasonable

Based on plaintiffs' Amended Complaint and Rasmussen's deposition testimony, it appears that plaintiff Rasmussen's excessive force is based on two purported applications of excessive force: (1) an officer grabbing plaintiff Rasmussen by the hair, hitting her head on the window sill, dragging her out of the room into the hall way and blocking her re-entry to the room (56.1 ¶¶ 47-49); and (2) Nixon using his knee to press Rasmussen onto the floor while he placed her in handcuffs. (Ex. B at ¶¶ 47-49; 56.1 ¶¶ 59-62).

a)  Force Used to Remove Plaintiff Rasmussen from the Room

Rasmussen claims that after she attempted to get in between an officer and Ivan, and once she started pushing the officer's arms away from Ivan, an officer threw her into a window sill and then threw her out of the room.  (56.1 ¶¶47-49)  Rasmussen was not thrown out of the room until she got in front of the officers and Ivan, pushed them and hit them with her hands.  (56.1 ¶¶ 38-43, 45-46)  Moreover, Ivan testified that Rasmussen pushed the officers away from him and jumped on the officers.  (56.1 ¶¶ 40, 42)  Rasmussen claims that she hit the officers after Vanorden's gun was discharged and the officers were struggling on the bed with Ivan.  (56.1 ¶ 39). In fact, defendant Perez admits to removing Rasmussen from the room after he saw her on Nixon's back.. (56.1 ¶ 45)  After being thrown into the hallway, Rasmussen tried to re-enter the room and Perez blocked her from re-entering the room. (56.1 ¶ 49-50).  Even viewing facts in the light most favorable to plaintiff,  the officers' alleged actions were reasonable.  Considering that plaintiff's maintain that a gun had just been discharged in the room, that there was already one suspect struggling with at least one officer on the bed, and that Rasmussen was assaulting either one or both of the officers, it was reasonable for Perez to use force in order to remover Rasmussen from the area and to prevent her from entering for her own safety and the safety of Ivan and the officers.

b) <u>Force Used to Handcuff Rasmussen</u>

Rasmussen also alleges that in effecting her arrest, Nixon threw her onto the floor, pressed his knee into her back, and slammed her head into the floor several times. Ex. B at ¶48. However, Rasmussen admits that because she is claustrophobic, when Nixon attempted to handcuff hers she panicked, and that she repeatedly tried to raise her head. (56.1 ¶¶ 63-64). In fact, Rasmussen concedes that, "of course I was trying to resist the handcuffs a little," and Nixon and Perez also contend that she was resisting arrest. (56.1 ¶¶ 65, 66). As discussed above, officers are entitled to use force in order to subdue a resisting suspect. <u>See</u> <u>Salim v. Proulx</u>, 93 F.3d 86, 91 (2d Cir. 1996). Since Nixon was merely trying to keep plaintiff on the ground to handcuff her and prevent her from raising her head, he acted reasonably in effecting Rasmussen's arrest. Therefore, the claim of excessive force against defendant Nixon should be dismissed.

3) <u>Plaintiff's lack of physical injuries</u>

The nature of plaintiff's injury is clearly relevant in evaluating an excessive force claim. <u>Garcia</u>, 2010 U.S. Dist. LEXIS 11106 at *18.. In order to maintain an excessive force claim, the plaintiff is required to show *some* injury, even thought it need not be severe. <u>See,</u> <u>Phelps v. Szubinski</u>, 577 F. Supp. 2d 650, 663 (E.D.N.Y. 2008) (dismissing excessive force claim because plaintiff suffered no demonstrable physical injury as a result of officers' actions); <u>Santiago v. C.O. Campisi</u>, 91 F. Supp. 2d 665, 674 (S.D.N.Y. 2000)(Lack of medical evidence of injury supports dismissing a force claim on motion); <u>McAllister v. New York City Police Dep't</u>, 49 F. Supp. 2d 688, 699 (S.D.N.Y. 1999) ( "an arrestee must prove that he suffered some injury in order to prevail in an excessive force claim")(citation omitted). Moreover, there must be some proximate cause between the excessive force and alleged injuries. <u>See</u> <u>Johnson v. County of Nassau</u>, 2010 U.S. Dist. LEXIS 101752 at *8-9 (E.D.N.Y. Sept. 27, 2010) (force claim dismissed where plaintiff was grabbed by arm, but alleged that he suffered from head and stomach aches.).

11

Here, Rasmussen has no identifiable injuries from the March 7, 2009 incident. When asked if she had any physical injuries as a result of defendants' alleged actions, she could only point to a small scar on her leg that she *thinks* was caused by being allegedly thrown to the floor. (56.1 ¶ 67). However, she could not specifically recall how she got the scar only noting that she did not notice it on her leg before the incident. (56.1 ¶ 68). Furthermore, she admits that she as not bleeding and she never sought medical treatment as a result of this incident. (56.1 ¶¶ 69-70). As she claims no other physical injuries, and since the scar is of uncertain origins and unrelated to defendants' use of force, this injury is insufficient to allow plaintiff to maintain her cause of action. Finally to the extent that she alleges emotional trauma as a result of defendants actions, plaintiff "can obtain no relief for purely psychological injuries" stemming from the use of excessive force. Johnson, 2010 U.S. Dist. LEXIS 101752 at * 9. Thus, defendants are entitled to summary judgment on Rasmussen's excessive force claim.[2]

## POINT III

### PLAINTIFFS' MONELL CLAIM FAILS

In order to hold a municipality liable as a "person" within the meaning of 42 U.S.C. § 1983, plaintiff must establish that the municipality itself was somehow at fault. Oklahoma City v. Tuttle, 471 U.S. 808, 810 (1985); Monell v. Department of Social Services, 436 U.S. 658, 690-91 (1978). In order to establish municipal liability, plaintiff must first establish prove the existence of a municipal policy or practice. Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995)(citations omitted). To prove the existence of a policy or custom, plaintiff must establish the following: (1) the existence of a formal policy, officially promulgated or adopted by a municipality, Monell, 436 U.S. at 690; (2) that an official or officials responsible

---

[2] As Rasmussen's excessive force claim fails, her state law assault and batter claims must fail as well. See Diaz v. City of New York, 00 CV 2944 (JMA), 2006 U.S. Dist. LEXIS 93923, at *5-*6 (E.D.N.Y. Dec. 29, 2006) (citation omitted).

for establishing final policy with respect to the subject matter in question took action or made a specific decision that caused the alleged violation of plaintiff's constitutional rights, Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986) (plurality opinion); (3) the existence of an unlawful practice by subordinate officials so permanent and well settled to constitute "custom or usage," and proof that this practice was so manifest or widespread as to imply the constructive acquiescence of policymaking officials, City of St. Louis v. Praprotnik, 485 U.S. 112, 127-30 (1985) (plurality opinion); Sorlucco v. New York City Police Department, 971 F.2d 864, 871 (2d Cir. 1992); or, if liability is based on a claim of failure to train or supervise, that (4) "the failure to train amounts to deliberate indifference to the rights of those with whom municipal employees will come in contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989); Walker v. City of New York, 974 F.2d 293, 297-98 (2d Cir. 1992).

Additionally, assuming plaintiff is able to identify a policy or custom as outline above, he must also show a "direct casual link between municipal policy or custom and the alleged deprivations." City of Canton, 489 U.S. at 385.  Plaintiffs must demonstrate that the municipality made a deliberate choice, implemented through this "policy" or "custom," that acted as "the moving force [behind] the constitutional violation." Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993).

A.  Failure to Train or Supervise

Here, plaintiffs' amended complaint alleges that the City "as municipal policymaker in the training and supervision of Defendant police officers, has pursued a policy and custom of deliberate indifference to the rights of persons . . . ." (Ex. B at ¶ 111).  To the extent that this can be interpreted as an allegation that defendant City failed to adequately train or supervise police officers, it is entitled to summary judgment on any such claim.  A failure to train or supervise may serve as a basis for § 1983 liability, but only in instances where plaintiff can demonstrate both the requisite culpability as well as causation.  See Morrissey v. City of New

York, 963 F. Supp. 270, 273 (S.D.N.Y. 1997).   With respect to culpability, plaintiff must establish a 'deliberate indifference' or 'conscious disregard' to the rights of citizens.   Deliberate indifference constitutes more than negligence or even 'heightened' negligence on the part of the municipality.   See Id.; Board of the County of Comm'rs of Bryan County v. Brown, 520 U.S. 397, 411 (1997).   As for causation, a plaintiff must prove that a deficiency in training actually caused the injury.   See Morrissey, 963 F. Supp. at 274.   This standard is a stringent one, because adopting a lesser standard would leave municipalities open to "unprecedented liability under § 1983."   Id. (quoting City of Canton, 489 U.S. at 391).

To establish a Monell claim based on a theory of inadequate training or supervision, a plaintiff must first show that the need to train or supervise is "so obvious" that a failure to do so could properly be characterized as "deliberate indifference."   See Walker v. City of New York, 974 F.2d 293, 297 (2d Cir. 1992) (quotation omitted).   In order to establish deliberate indifference, a plaintiff must first show that a policymaker knows "to a moral certainty" that its employees will confront a given situation.   Id.   Second, a plaintiff must demonstrate that the "situation either present[ed] the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation."   Id.   Last, plaintiff must demonstrate that the wrong choice by the employee will frequently cause the deprivation of a citizen's constitutional rights.   Id.

To succeed under a failure to train or supervise theory, a plaintiff must also establish causation.   See Morrissey, 963 F. Supp. at 274.   Moreover "where the policy relied upon is not itself unconstitutional, *considerably* more proof than the single incident will be necessary in every case to establish both the requisite fault . . . and the causal connection between the 'policy' and the deprivation."   Martin v. City of New York, 627 F. Supp. 892, 897 (E.D.N.Y. 1985).   See also Polite v. Town of Clarkstown, 120 F. Supp.2d 381, 385 (S.D.N.Y. 2000) (summary judgment granted where there was no evidence of inadequate training other

14

than that alleged in the instant action).  Thus, proof of inadequate training or supervision alone, is insufficient; plaintiff must present adequate proof that this alleged inadequate training or supervision was the cause of her constitutional deprivations.  Plaintiffs must also demonstrate that there was a deliberate indifference on the part of the City of New York that actually caused their rights to be violated.  Only "if the need for more or different training is so likely to result in the violation of constitutional rights [that] the policymakers of a city can reasonably be said to have been deliberately indifferent to the need," then the failure to provide proper training may be viewed as a city policy for which the city may be held liable.  Canton, 489 U.S. at 390.

In the instant case, plaintiffs have failed to establish that the need for different training was so obvious as to constitute a deliberate indifference.  Plaintiffs cannot establish that the City of New York knew 'to a moral certainty' that its employees purposely and intentionally violated the civil rights of individuals by using excessive force or arresting them in the absence of probable cause.  See McAllister v. New York City Police Department, 49 F. Supp.2d 688, 692 (S.D.N.Y. 1999); Ladner v. City of New York, 20 F.Supp. 2d 509, 519 (E.D.N.Y. 1998).  Even if plaintiff could, establish that the City of New York knew its employees regularly violated the rights of individuals by using excessive force or arresting them in the absence of probable cause, plaintiff cannot demonstrate that every situation in which officers arrest an individual that different training or supervision would have resulted in different actions taken by the officers.  See Walker, 974 F.32d at 297.  Further, the mere recitation that the City should have established better training or supervision policies, in response to the need to prevent, restrain, and discipline officers who use excessive force or arrest individuals in the absence of probable cause, lacks the requisite specificity to constitute a deliberate indifference on the part of the municipality.  See, e.g., Burge v. Parish of St. Tammy, 187 F.3d 452, 473-74 (5th Cir. 1999) (finding that the mere recitation that the District Attorney should have implemented better policies and procedures lacked the requisite specificity to constitute deliberate indifference).  Moreover, the failure to

train an officer for a single incident of illegality is insufficient to raise an inference of municipal policy or custom.  See Baker v. Willet, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) (citing Turpin v. Mailet, 619 F.2d 196, 202 (2d Cir. 1980)).  Accordingly, plaintiff must proffer evidence that questioned conduct is a repeat occurrence that policymaking officials should have been aware of.  See Hoffman v. County of Delaware, 41 F. Supp. 195, 216 (N.D.N.Y. 1999).

Here, plaintiffs have failed to come forward with any admissible evidence during discovery of this matter, to support this purported policy or practice which is "fatal" to plaintiff's Monell claim.  Griffin v. City of New York, 287 F. Supp.2d 392, 395 (S.D.N.Y. 2003).  Even if plaintiffs could establish deliberate indifference constituting a policy, plaintiffs have not established a causal link between the policy and the conduct at issue here, or shown that a more adequate means of training or supervision would aid in avoiding the violation of an individual's rights in the future.  See Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983).  Thus, a failure to train or supervise cannot be the moving force behind any alleged constitutional violations.

B.  Initiating and Continuing Criminal Proceedings in the Absence of Probable Cause

The Amended Complaint also contains conclusory allegations that the City has policies and practices of "initiating and continuing criminal proceedings without evidence of criminal activity." (Ex. B at ¶ 105).  As an initial matter, since Ivan pled guilty to the criminal charges brought him, and Rasmussen accepted an adjournment in contemplation of dismissal as a result of the criminal charges brought against her (56.1 ¶¶ 100-101), neither plaintiff can establish that they were maliciously prosecuted (nor was any such claim pled), and thus this cannot possibly be the moving force behind any of the purported constitutional violations that plaintiffs actually alleged.  In any event, as noted in sub-point A, *supra*, plaintiffs have failed to come forward with any evidence of this purported policy, Griffin, 287 F. Supp. 2d at 395 (lack of evidence "fatal" to Monell claim), and "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal

policy." <u>Ricciuti v. N.Y.C. Transit Auth.</u>, 941 F.2d 119, 123 (2d Cir. 1991).  Thus, defendant City is entitled to summary judgment on plaintiff's <u>Monell</u> claim.

**POINT IV**

**<u>RASMUSSEN'S IIED CLAIM FAILS</u>**

Rasmussen's claim for intentional infliction of emotional distress ("IIED") should be dismissed because, in New York, "no [IIED] claim will lie where the conduct underlying the claim falls within the ambit of traditional tort liability.'"  <u>Moore v. City of New York</u>, 219 F. Supp. 2d 335, 339 (E.D.N.Y. 2002) (citations omitted).[3]  Here, because plaintiff's claims fall within the scope of the torts of false imprisonment and battery, plaintiff's claim for IIED must be dismissed.  <u>Id.</u>  Additionally, plaintiff's IIED claim should be dismissed as against defendant City of New York since public policy prohibits recovery for claims of IIED against a governmental entity.  <u>Hazan v. City of New York</u>, No. 98 Civ. 1716, 1999 U.S. Dist. LEXIS 10499, at *23 (S.D.N.Y. July 9, 1999).

The tort of IIED requires proof of "four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress."  <u>Stuto v. Fleishman</u>, 164 F.3d 820, 827 (2d Cir. 1999)(citation omitted).  In order to prevail on an IIED claim, defendants' conduct has to be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>Lydeatte v. Bronx Overall Econ.</u> <u>Dev. Corp.</u>, 2001 U.S. Dist. LEXIS 1670, at *3-4 (S.D.N.Y. Feb. 22, 2001) (quotation omitted).

In order to make out a cause of action for IIED "the [alleged] conduct must ... be intentionally directed at the plaintiff."  <u>Martin v. Citibank, N.A.</u>, 762 F.2d 212, 220 (2d Cir. 1985), <u>see also</u> <u>Busch v. City of New York</u>, 2003 U.S. Dist. LEXIS 27571, at *23 (E.D.N.Y.

---

[3] Ivan has not brought an IIED claim.  (See Ex. B. at ¶¶ 89-93).

17

Sept. 11, 2003) (dismissing IIED claim since statements that allegedly constituted the extreme and outrageous conduct were directed to a third party).   Here, Rasmussen alleges that police officers beat and shot Ivan,  to intentionally cause severe emotional distress to Rasmussen.  (Ex. B, ¶ 91).  However, plaintiffs have adduced no evidence to support this claim, nor have they set forth any facts in the complaint to make such a claim plausible.  (See Ex. B.)  In fact, Rasmussen admits that the officers were attempting to remove her from the room during the incident.  (56.1 ¶¶ 48-50).  Defendants efforts to prevent Rasmussen from re-entering the room negates any possible inference that defendants *intended* to cause her severe emotional distress.

Finally, Rasmussen has presented no proof demonstrating a nexus between any severe emotional  distress and the alleged conduct complained of.  See, e.g., Russo, 2008 U.S. Dist. LEXIS 79032 at *15 (no causal connection where medical report only makes diagnosis but does not address whether the condition stems from complained of incident or was pre-existing). Accordingly, defendants are entitled to summary judgment on plaintiff's IIED claim.

## POINT V

## RASMUSSEN'S DUE PROCESS CLAIM FAILS

Rasmussen alleges facts in the Amended Complaint claiming that she was denied access to medical treatment while she was arrested and detained. (Am Cop., Ex. B, ¶¶ 57-59)A claim for deliberate indifference to medical needs can constitute a violation of due process rights guaranteed to a pretrial detainee under the Fourteenth Amendment. See Bryant v. Maffucci, 923 F.2d 979, 983 (2d Cir. 1991). "Claims for deliberate indifference to a serious medical condition . . . of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment." Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009).  In order to succeed on such a claim, the plaintiff must demonstrate both objective and subjective elements by establishing that (1) "[she] had a serious medical condition," and (2) "[the condition] was met with deliberate indifference." Id. At.  The second

prong of the deliberate indifference test, is a subjective determination. Farmer, 511 U.S. at 837 ("the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). Thus, the plaintiff must demonstrate that the individual defendants had "actual knowledge of a substantial risk" that the specific injury in question would occur. Mroz v. City of Tonawanda, 999 F. Supp. 436, 456-457 (W.D.N.Y. March 31, 1999).

As an initial matter, while Rasmussen alleges that officers did not immediately provide her access to her medication, she fails to specify which defendants were purportedly indifferent to her medical needs, which is fatal to her claim. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (personal involvement of defendants is a prerequisite to an award of damages under § 1983). She testified that she didn't know which officers she asked for her mediation and only identified this officer as "the one in the baseball hat." (56.1 ¶ 78).

A.    Need for Medical Treatment

Plaintiff's due process claims fail because there is no evidence, nor has plaintiff alleged, that she needed medical treatment while in custody. Plaintiff alleges that she suffered from diabetes, which is recognized a serious medical condition. Beatty v. Davidson, 713 F. Supp. 2d 167, 174 n4 (W.D.N.Y. 2010). Plaintiff has not proffered evidence, however, that her diabetes would have necessitated medical treatment while in police custody. In fact, Rasmussen admits to twice signing forms denying medical treatment -- once at the precinct and once at central booking.  (56.1 ¶¶ 81-82, 91-92). Rasmussen further testified that she understood the forms, but lied about her medial conduction so that she could get out of custody faster. (56.1 ¶¶ 82,92)  Also, while Rasmussen claims that she twice asked an unidentified female correction officer at central booking for medical treatment, this was long after Rasmussen had any contact with any of the defendants. (56.1 ¶ 93). Moreover, Rasmussen concedes that she would not have gone to the hospital anyway and not go to the hospital after she was released. (56.1 ¶ 95).  In

fact, Rasmussen did not go to a doctor regarding her diabetes until nearly six months later. (56.1 ¶ 97). Rasmussen states the reasons she did not seek medical treatment after the incident is because do she felt fine and could handle it on her own. (56.1 ¶ 98).

B.   Plaintiff cannot demonstrate deliberate indifference

Plaintiff's claim fails because she cannot demonstrate that the defendants were aware of and deliberately disregarded the risk to plaintiff's medical well-being. Rasmussen claims that after she was handcuffed and was being escorted from the apartment, she told unidentified officers that she needed her diabetes medication. (56.1 ¶ 77). Rasmussen does not know which officers she asked for her mediation and only identified "the one in the baseball hat" as the police officer whom she asked for medication. (56.1 ¶ 78). According to Rasmussen, an unidentified officer informed her that she could not retrieve or take the medication because the apartment had to be investigated and nothing was to be touched. (56.1 ¶ 79). Rasmussen was taken back to the precinct where she was offered medical attention, which she refused. (56.1 ¶¶ 80,81). However, despite refusing medical attention, she claims to have asked unidentified officers at the precinct for her mediation repeatedly. (56.1 ¶ 83). These requests were not ignored, and the officer "in the baseball hat" called Carmen Kimbrough, went back to the apartment and retrieved Rasmussen's medication. (56.1 ¶¶ 84-85). At approximately 7:00 a.m. -- approximately twelve hours after she her arrest, Rasmussen admits that police officers provided her with her medication at the precinct. (56.1 ¶ 86). Rasmussen claims that the officer retrieved the wrong medication, but she took in anyway because it could help a little bit. (56.1 ¶ 87). Rasmussen maintains that this officerwas being "very, very kind to [her]." (56.1 ¶ 88).

Rasmussen contends that she was transported to Central Booking sometime after 7:00 a.m. which is when she received her medication, and was there until approximately 5:00 p.m. (56.1 ¶ 89). At Central Booking, Rasumssen was seen by medical personal, but she again signed a form stating that she did not have a medical condition and did not require medical

treatment. (56.1 ¶ 90-92).   Rasmussen claims that she twice asked an unidentified female correction officer at central booking for medical treatment, however this occurred long after Rasmussen had any involvement with the defendants. (56.1 ¶ 93).

Rasmussen's claim must be dismissed because, as noted earlier, plaintiff has not indicated how defendant officers Nixon, Vanorden, Mahoney or Perez were deliberately indifferent to her medical needs.   Importantly, the fact that an officer made the effort to get her medicine flies in the face of any allegation that he was deliberately indifferent to her condition. (56.1 ¶ 84-88). See Araujo v. City of New York, 2010 U.S. Dist. LEXIS 26082, *22-*25 (E.D.N.Y. Mar. 19, 2010) (dismissing plaintiff's deliberate indifference claim where, after arrestee informed officers of his diabetic condition, officers went to his home and retrieved the medication).   In fact, if anyone exhibited deliberate indifference it was Rasmussen who was offered medical treatment at the precinct, and was actually seen by medical personnel at Central Booking, but on both occasions denied that she needed any treatment.  (56.1 ¶¶ 80-81; 90-92). Thus, Rasmussen's deliberate indifference to medical needs claim must fail.

## POINT VI

## PERSONAL INVOLVEMENT

Plaintiffs' claims against Mahoney fail because he had no personal involvement in any alleged constitutional deprivations.   It is well established that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. Wright, 21 F.3d at, 501; Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948 (2009).  Here, it is clear that Mahoney had no personal involvement in the arrest or use of force of plaintiff Rasmussen or the purported use of excessive force on Ivan.  Mahoney entered the apartment with Lt. Kelly and when they entered they saw Nixon with an already handcuffed Rasmussen. (56.1 ¶ 71). Moreover, Rasmussen is not claiming that any excessive force was used on her after she was placed in handcuffs. (56.1 ¶ 72)  By the time Mahoney arrived, Rasmussen had already been

21

arrested, any physical altercation had ceased, and Ivan was sitting in the back room. (56.1 ¶ 72). In fact, there is no evidence to suggest that Mahoney was ever even in the back room of the apartment. (56.1 ¶ 73).   Five to ten minutes after his arrival, Mahoney transported Ivan to the hospital with another officer, whom he believes was Officer Carerro. (56.1 ¶ 74).

In fact, plaintiffs Rasmussen and Ivan don't even know who Mahoney is, and did not indicate that he had any involvement in the incident.  (56.1 ¶ 75).  Moreover, Rasmussen admits that Nixon is the sole officer who placed her in handcuffs. (56.1 ¶ 59). While, Nixon placed her in handcuffs, plaintiff Rasmussen maintains that at least one unidentified officer was present, but there is no evidence to suggest that this office was Mahoney. (56.1 ¶ 61).  Even assuming, *arguendo*, that Mahoney was present while Rasmussen was being handcuffed, as there is no allegation that he observed the underlying conduct that led to her arrest and there would be no reason for him to intervene, as it would be reasonable for him to trust his fellow officer. Additionally, plaintiffs have failed to put forth any evidence that Mahoney was involved in any use of force on Ivan – or that he was even in the back room at all. (56.1 ¶ 72-73). Finally, Rasmussen makes no allegation or has put forth any evidence that she notified Mahoney that she had diabetes and required medication. (56.1 ¶ 75,78).

As the undisputed facts show that defendant Mahoney did not enter the apartment until after plaintiffs were arrested, any force had ceased and did not deny Rasmussen her medication, defendant Mahoney is entitled to summary judgment on all of plaintiffs' claims brought against him, as he had no personal involvement in any alleged constitutional violations, nor did he have any opportunity to intervene to stop any alleged violations.

## POINT VII

### QUALIFIED IMMUNITY

Nixon, Vanordnen, Mahoney and Perez are entitled to qualified immunity from liability.  It is axiomatic that qualified immunity is "an immunity from suit rather than the mere

defense to liability and is effectively lost if the case is erroneously permitted to go to trial."
Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).   The question of qualified immunity is
independent from the merits of the underlying action and must be examined independent of the
underlying false arrest and excessive force claims.  See Saucier v. Katz, 533 U.S. 194 (2001).
"[T]o deny summary judgment any time a material issue of fact remains . . . could undermine the
goal of qualified immunity."  Id.. at 202.  Qualified immunity is important since it is inevitable
that "officials will, in some cases, reasonably but mistakenly [take actions that are later found to
be illegal]; in such cases those officials . . . who act in ways they reasonably believe to be lawful,
should not be held personally liable."  Anderson v. Creighton, 483 U.S. 635, 641 (1987) (citation
omitted).   Where reasonably competent officials could disagree as to whether the conduct at
issue would violate clearly established rights, the immunity defense is available.  Cartier v.
Lussier, 955 F.2d 841, 846 (2d Cir. 1992).  Thus, qualified immunity "protects all but the plainly
incompetent or those who knowingly violate the law."  Saucier, 533 U.S. at 202 (quotation
omitted).   In analyzing a qualified immunity defense, courts may choose to determine whether
or not the right was "clearly established" without first deciding whether there was a violation of
plaintiff's constitutional rights.  Pearson v. Callahan, 129 S. Ct. 808, 813, 818-21 (2009).

The "clearly established" inquiry requires that "if the law did not put the officer
on notice that his conduct would be clearly unlawful, summary judgment based on qualified
immunity is appropriate."  Saucier, 533 U.S. at 202-03.  The "relevant, dispositive inquiry in
determining whether a right is clearly established is whether it would be clear to a reasonable
officer that his conduct was unlawful in the situation he confronted."   Id. at 202.   When
addressing the applicability of the qualified immunity defense to an allegation of false arrest, the
Second Circuit has determined that "the defending officer need only show 'arguable' probable
cause."  Caldarola v. Calabrese, 298 F.3d 156, 162 (2d Cir. 2002) (citaiton omitted). "This is
because at its heart, 'the concern of the immunity inquiry is to acknowledge that reasonable

mistakes can be made as to the legal constraints on particular police conduct.'" Id. at 162 (quoting Saucier, 533 U.S. at 205). "Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause . . . and in those situations courts will not hold that they have violated the Constitution." Saucier, 533 U.S. at 206. Moreover, "[t]he Supreme Court has…made clear that even officers who are found to have used excessive force may be entitled through the qualified immunity doctrine to an extra layer of protection ˙from the sometimes hazy border between excessive and acceptable force.'" Stephenson v. Doe, 332 F.3d 68, 77 (2d Cir. 2003) (quoting Saucier, 533 U.S. at 206).

At a very minimum in the present case, defendants Nixon, Vanordnen, Mahoney and Perez would be entitled to qualified immunity. As set forth in more detail in Point I, *supra*, at the time plaintiff Rasmussen claims that she was arrested, plaintiff had already, admittedly, interfered in Ivan's arrest and pushed police officers. (56.1 ¶¶ 38-44, 59). Thus, it was objectively reasonable for them to believe there was probably cause for her arrest, and at a minimum there was "arguable" probable cause. See Caldarola, 298 F.3d at 162. Moreover, as set forth in Point VI, *supra*, defendant Mahoney was not even present when this conduct occurred, and thus it was reasonable for him to believe that his fellow officers had probable cause as he had no way to independently determine whether or not there was probable cause for Rasmusen's arrest. Moreover, even assuming, *arguendo*, that it was lawful for Rasmussen to interfere with Ivan's arrest due to the force purportedly being used against Ivan, defendant Perez would still be entitled to qualified immunity on the false arrest claim, as he arrived when Rasmussen was already interfering with the arrest of Ivan, and thus it was reasonable for him to believe that defendants Nixon and Vanorden were attempting to effect a lawful arrest. (56.1 ¶ 45, 50)

With respect to Rasmussen's excessive force claims and the portions of Ivan's excessive force claims that defendants moved for summary judgment on in Point II *supra*,

24

Nixon, Vanordnen, Mahoney and Perez are also entitled to qualified immunity.  As set forth in more detail in Point II, *supra*, defendants' use of force to handcuff Ivan was objectively reasonable.  Also, any force used on Rasmussen was lawful as it was objectively reasonable to believe that she was trying to push the officers away from Ivan. Additionally, and any force used while attempting to place Rasmussen in handcuffs was reasonable because she was admittedly resisting arrest. (56.1 ¶ 66).  Moreover, as Mahoney was not present when any of the force was used on Ivan or Rasmussen, at a minimum, he should be entitled to qualified immunity on their force claims.  Similarly, as defendant Perez was not present in the back room when officer Nixon purportedly punched Ivan or when the round was discharged and did not use any force on Ivan himself, he should be entitled to qualified immunity on all of the excessive force claims that Ivan brought against him.  Furthermore, while defendant Perez was present while some force was used on Ivan, since (1) defendant Perez was not present when the force was first used, (2) it was objectively reasonable for him to believe that Ivan was struggling with officers trying to effect a lawful arrest when he entered the back room and (3) defendant Perez's attention was properly focused on attempting to stop Rasmussen from interfering in Ivan's arrest, defendant Perez is also entitled to qualified immunity on any failure to intervene claim, with respect to the force used on Ivan.  Finally, to extent that the Court finds that there are disputes of fact as to whether or not the gunshot was intentional, at a minimum, Mahoney, Nixon, and Perez would be entitled to summary judgment on any deadly force claim, as there was no reasonable opportunity for them to intervene to prevent the firearms discharge.