UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
                                                          :
NASTAZJA FRIIS RASMUSSEN, and                             :
IVAN KIMBROUGH, and CARMEN                                :
KIMBROUGH,                                                :
                                                          :
                              Plaintiffs,                 :   **MEMORANDUM**
                                                          :   **DECISION AND ORDER**
              - against -                                 :
                                                          :   10 Civ. 1088 (BMC)
                                                          :
THE CITY OF NEW YORK, POLICE                              :
OFFICER CHRISTOPHER CARRERO,                              :
DETECTIVE JOHN R. NIXON, SERGEANT                         :
JOHN VANORDEN, POLICE OFFICER                             :
JAMES MAHONY, SERGEANT ROGER                              :
PEREZ, POLICE OFFICERS JOHN DOE,                          :
Individually and in their Official Capacities,            :
                                                          :
                              Defendants.                 :
                                                          :
----------------------------------------------------------X

**COGAN,** District Judge.

Before the Court is defendants' motion in limine to exclude plaintiff's forensic expert from testifying. For the reasons stated below, the defendants' motion is granted in part and denied in part.

## BACKGROUND

This case is scheduled for trial on March 28, 2011. The Court held a pretrial conference on February 11, 2011. In advance of that conference, the parties submitted motions in limine. The Court ruled on most of the parties' motions at the conference; however, it did not rule on defendants' motion to exclude plaintiff's forensic expert, Michael Sinke, from testifying. Rather, the Court set a hearing pursuant to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786 (1993).

In advance of that hearing, the parties submitted a joint letter. In the letter, plaintiff noted that he provided defendants with an affidavit from Mr. Sinke in which Mr. Sinke outlined his qualifications and explained his conclusions. Defendants, after reviewing the affidavit, informed plaintiff, who subsequently informed the Court, that they withdrew their request for a <u>Daubert</u> hearing. Defendants instead limited their objection to Mr. Sinke's qualifications and decided to rest on their moving papers filed in support of their motion <u>in limine</u> and on Mr. Sinke's affidavit, which was filed with the joint letter.

## **DISCUSSION**

There are certain requirements a witness must satisfy before he can be allowed to offer expert testimony. First, the "witness [must be] qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Second, the expert's testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." <u>Id.</u> This requirement "goes primarily to relevance." <u>Daubert</u>, 509 U.S. at 591, 113 S. Ct. 2786; <u>see also</u> <u>Amorgianos v. Nat'l R.R. Passenger Corp.</u>, 303 F.3d 256, 265 (2d Cir. 2002) (stating that an expert witness's testimony must be relevant, <u>i.e.</u>, it must have a "tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence"). Finally, the expert's testimony must have "a sufficiently 'reliable foundation' to permit it to be considered." <u>Amorgianos</u>, 303 F.3d at 265 (quoting <u>Daubert</u>, 509 U.S. at 597, 113 S. Ct. 2786).

Initially, defendants challenged Mr. Sinke's testimony on the grounds that (1) Mr. Sinke is unqualified to testify as an expert regarding bullet trajectories; (2) Mr. Sinke is unqualified to testify as an expert regarding blood spatter analysis; (3) Mr. Sinke is unqualified to testify regarding the cause of plaintiff's injury; (4) Mr. Sinke's blood spatter analysis testimony will not

assist the trier of fact; and (5) Mr. Sinke's blood spatter analysis will be unduly prejudicial and a waste of time. In the joint letter, however, plaintiff informed the Court that "defendants solely seek a determination on Mr. Sinke's qualifications." Accordingly, the Court will restrict its discussion to that issue.

I.      **Mr. Sinke's Qualifications to Testify as an Expert Regarding Blood Spatter Analysis**

After reviewing Mr. Sinke's affidavit and portions of his deposition testimony, it is undeniable that he is qualified to testify as an expert in blood spatter analysis. In 1976, Mr. Sinke was accepted into the Forensic Science Division of the Michigan State Police and successfully completed a three-year training program under the guidance of court-qualified forensic specialists. As part of this program, Mr. Sinke averred that he "received extensive training in crime scene investigation, which encompassed the recognition, collection and preservation of all forensic evidence." During this three-year training period, Mr. Sinke also received training related to blood spatter analysis.

Mr. Sinke was employed by the Michigan State Police for 25 years. During this time, he was involved in processing over 200 major crime scenes, many of which involved blood spatter analysis. Upon retiring from the Michigan State Police in 1997, Mr. Sinke entered private practice as a Latent Print Specialist and Crime Scene Reconstruction Expert at Speckin Forensic Laboratories. After his retirement, he attended a five day training seminar that dealt with the examination and analysis of blood spatter. Since 1997, Mr. Sinke has testified as a blood spatter expert at least 5 times. He has also been invited to give presentations on forensic analysis and the examination of crime scene evidence, including blood evidence, by the Criminal Defense Association of Michigan and the Ohio Association of Criminal Defense Lawyers. Mr. Sinke has also been an invited speaker at the Michigan State University Law Department.

Mr. Sinke has been appointed by judges and retained by law firms to review crime scene evidence, including blood spatter. He has also been retained by law enforcement agencies to examine shooting cases. Finally, Mr. Sinke is a member of several professional organizations, including the American Academy of Forensic Sciences, the International Association for Identification, and the Michigan Ontario Identification Association.

In challenging Mr. Sinke's qualifications to offer expert blood spatter analysis, defendants seek to portray Mr. Sinke's formal training as to minimal to warrant qualification. They also rely on the following factors: (1) he has never been certified as a forensic expert in blood spatter analysis, or any other forensic specialty; (2) he is not licensed as an expert; and (3) he has never published any literature on blood spatter analysis. The Court finds these arguments unavailing in light of the information discussed above.

First, there is no requirement that Mr. Sinke's expert testimony be based solely, or even partially, on formal training. See Fed. R. Evid. 702. The fact that Mr. Sinke's formal training in blood spatter analysis is by no means extensive does not, therefore, necessarily compel a finding that Mr. Sinke is unqualified to offer expert testimony on the subject. Defendants' other arguments are rejected for the same reason. There is simply no requirement that a witness be certified, licensed, or published before he can offer expert testimony on a subject. While these factors may, in certain cases, be relevant to a court's finding of qualification, their absence here does not discount Mr. Sinke's extensive practical experience in crime scene investigation generally and blood spatter analysis specifically. See United States v. Locascio, 6 F.3d 924, 937 (2d Cir. 1993). Accordingly, the Court rules that Mr. Sinke is qualified to testify as an expert regarding blood spatter analysis. In so ruling, the Court stresses that it is not relying on any one

factor in Mr. Sinke's background, but rather on the totality of Mr. Sinke's 30-plus years of experience.

**II.     Mr. Sinke's Qualifications to Testify about the Cause of Plaintiff's Injury**

Mr. Sinke is not qualified to testify as an expert regarding the cause of plaintiff's injury. At two separate points during the course of Mr. Sinke's deposition, he was asked to opine about what could have potentially caused plaintiff's injury other than a bullet creasing his scalp. Both times Mr. Sinke replied that he was not a forensic pathologist and that he was not going to testify as to how plaintiff's injuries were caused. In light of these admissions, the Court finds that Mr. Sinke is unqualified to testify as an expert regarding the cause of plaintiff's injury. This, of course, does not alter the Court's conclusion that Mr. Sinke is qualified to testify as an expert regarding blood spatter analysis. He may, therefore, still testify as to what, in his expert opinion, caused the blood spatter on the wall.

**III.    Mr. Sinke's Qualifications to Testify as an Expert Regarding Bullet Trajectories**

Mr. Sinke is not qualified to testify as an expert regarding bullet trajectories. At his deposition testimony, he admitted that he did not consider himself an expert on "[bullet] trajectory analysis." The Court will not qualify a witness as an expert in an area if that witness does not even consider himself to be an expert.

Nevertheless, Mr. Sinke did also testify that he had significant experience examining bullet entrance holes during his professional career with the Michigan State Police and during his personal experiences shooting firearms. Further, he averred that during his experiences processing over 200 major crime scenes, he "assisted in determining the angle of trajectory of fired bullets that [had] entered or passed through objects such as walls and/or bodies." Accordingly, the Court finds that Mr. Sinke may testify that he examined a piece of sheet rock

5

pierced by a bullet and that the bullet appeared to have entered the wall at an upward angle.  In so ruling, the Court relies on Mr. Sinke's past experiences examining entrance holes and on the fact that the trajectory of the bullet entering the sheet rock is not necessary to any of the blood spatter conclusions reached in Mr. Sinke's report.  This testimony is not expert testimony analyzing the bullet's trajectory as it is not based on "scientific, technical, or other specialized knowledge" within the meaning of Federal Rule of Evidence 702.  Rather, it is testimony based upon Mr. Sinke's own personal knowledge of bullet entrance holes, and it is an opinion that is "rationally based on the perception of the witness."  Fed. R. Evid. 701.  Under these circumstances, Mr. Sinke's testimony is admissible.  See Fed. R. Evid. 701, Advisory Committee's Note (2000) (noting that "courts have permitted lay witnesses to testify that a substance appeared to be a narcotic, so long as a foundation of familiarity with the substance is established").

## **CONCLUSION**

For the reasons discussed above, defendants' motion in limine seeking to exclude expert testimony by Michael Sinke is granted in part and denied in part.

**SO ORDERED.**

Signed Electronically / Brian M. Cogan

Dated: Brooklyn, New York
      February 23, 2011

U.S.D.J.

6